**THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LEO JAMES, JR.** | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | **3:13-CV-1638** |
| | : | **(JUDGE MARIANI)** |
| **TRI-WAY METALWORKERS, INC.** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On June 18, 2013, Plaintiff, Leo James, Jr., filed a Complaint against Defendant, Tri-

Way Metalworkers, Inc. (Doc. 1). The Complaint alleges that Defendant deprived Plaintiff

of employment in whole or in part because of his race in violation of 42 U.S.C. § 1981

(Count I); conspired against Plaintiff in violation of 42 U.S.C. § 1985 (Count II); engaged in

unlawful practices protected under Title VII of the Civil Rights Act of 1964 and 1991, as

amended, and 42 U.S.C. § 2000e, *et seq.*, and retaliated against Plaintiff for exercising his

rights under Title VII (Counts III, IV, VII); fostered and perpetuated a hostile and offensive

work environment and retaliated against Plaintiff because of his expressed opposition to

these conditions in violation of 43 Pa.Cons.Stat.Ann. § 951, *et seq.* (Count VI); and

subjected Plaintiff to Intentional Infliction of Emotional Distress (Count VIII). Plaintiff also

requests declaratory judgment pursuant to 28 U.S.C. § 2201, *et seq.* (Count V) and Punitive

Damages (Count IX).

On October 22, 2013, Defendant filed a Motion to Dismiss Portions of Plaintiff's Complaint (Doc. 11) to which Plaintiff failed to respond despite this Court's Order to do so (Doc. 16). As a result, the Court granted in part and denied in part Defendant's motion, dismissing Counts I, II, and VIII as untimely, and striking Plaintiff's claims relating to the protected criteria of religion, but allowing Plaintiff to proceed with his claims of discrimination, harassment, and/or retaliation based on race, color, ancestry, and/or national origin. (Docs. 17, 18). Accordingly, to the extent that the Counts did not invoke claims of discrimination, harassment, and/or retaliation based on religion, the remaining Counts were Count III (Title VII); Count IV (42 U.S.C. § 2000e); Count V (Declaratory Judgment); Count VI (43 Pa.Cons.Stat.Ann. § 951, *et seq.*); Count VII (Retaliation); and Count IX (Punitive Damages).

Defendant filed a Motion for Summary Judgment (Doc. 26) on August 31, 2015, to which Plaintiff failed to timely file a brief in opposition or response to Defendant's statement of facts. Following the Court ordering Plaintiff's counsel to respond to Defendant's motion (Doc. 34), Plaintiff filed a Brief in Opposition to Defendant's motion (Doc. 40) and Response to Defendant's statement of material facts (Doc. 39) on November 30, 2015. Defendant timely filed a Reply brief. (Doc. 41). The motion is now ripe for decision. For the reasons set forth below, the Court will grant Defendant's motion in its entirety.

## II. STATEMENT OF UNDISPUTED FACTS

The defendant has submitted a Statement of Material Facts (Doc. 28) as to which it submits there is no genuine issue or dispute for trial. Plaintiff submitted a Response (Doc. 39) with the result being that the following facts have been admitted except as specifically noted:

Plaintiff, Leo James, Jr., is an African-American male who was employed by Defendant, Tri-Way Metalworkers, Inc., as a laborer in Shenandoah, Pennsylvania, from approximately May 9, 2006 until approximately April 25, 2007.[1] (Doc. 28, ¶¶ 1, 2). John Matino, Tri-Way's Vice-President, interviewed and hired Plaintiff. (*Id.* at ¶ 3).

Plaintiff asserts that during his employment at Tri-Way, a co-worker subjected him to harassing conduct based on his race. (*Id.* at ¶ 4). According to Plaintiff's deposition, co-worker, Dennis Hower, made "one or two" "racist" jokes and "often" called him the "N-word and boy". (Dep. of Leo James, Doc. 27, Ex. A, at 110-113).

According to Defendant, during Plaintiff's employment Tri-Way required non-supervisory employees to clock out for lunch breaks when they left Tri-Way's premises. (Doc. 28, ¶ 5). Defendant further states that if James was working in Defendant's

---

[1] Defendant's Statement of Material Facts states that James was employed by Tri-Way "until April 25, 2007" (Doc. 28, ¶ 1) and that James' final day of employment was April 25, 2007 (*id.* at ¶ 11). Plaintiff does not deny either of these statements. However, a review of the Affidavit of John Matino states that Plaintiff's employment was terminated on April 27, 2007. (Aff. Of John Matino, Doc. 27, Ex. C, ¶¶ 9, 10). The Referee's Decision/Order, issued by the Unemployment Compensation Board of Review, also lists April 27, 2007 as Plaintiff's final day. (Dep. of James, Ex. 3). Because these dates are only two days apart and neither party argues that the exact date of Plaintiff's termination is relevant here, the Court will not concern itself with this discrepancy for purposes of this motion.

3

warehouse, he understood that he was required to punch out for lunch. (*Id.* at ¶ 7). Plaintiff

responds "[d]enied" to both statements of fact, citing to his own Complaint and an exhibit

attached to his response to Defendant's statement of material facts, entitled "Finding of

Probable Cause" (Doc. 39, Ex. 1).[2] (Doc. 39, ¶¶ 5, 7). Despite Plaintiff's denial of

Defendant's statement of material fact, ¶ 5, the record evidence demonstrates that there is

no material dispute as to a more narrow version of this statement, which is captured in

Defendant's material statement of fact, ¶ 7. In Question 1 of Plaintiff's Response to

Defendant's First Set of Requests for Admission, Plaintiff checked the box "admitted" to the

following statement: "[d]uring Plaintiff's employment with Defendant, Defendant required

non-supervisor and non-field employees to clock out for lunch breaks when they left the

Defendant's premises." (Doc. 27, Ex. B). Further, in Plaintiff's deposition, he stated that it

was his understanding that the people who worked in the field did not have to punch out for

lunch, but that the employees in the warehouse who were leaving the warehouse did have

to punch out. (Dep. of James, at 101). Thus, the Court considers the fact that non-

---

[2] A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, Fed. R. Civ. P. 56 requires "the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted).

As a result, the Court will not give weight to Plaintiff's Complaint or consider the multiple citations to his Complaint throughout his response to support his denials of Defendant's statements of fact.

With respect to the Finding of Probable Cause cited by Plaintiff in response to certain statements of fact by Defendant, for the reasons discussed in Section IV(A), *infra*, the Court will not consider the document as creating a genuine dispute of material fact.

supervisor employees working in the warehouse had to clock out for lunch breaks when they left Tri-Way's premises, and James' understanding of such, as undisputed.

Defendant contends that Plaintiff was informed of the requirements to punch in and punch out at the time of his hire. (Doc. 28, ¶ 6). Plaintiff denies this statement of fact, citing once again only to his Complaint and generally to the Finding of Probable Cause, arguing that "[t]he requirements to punch in and out were not uniformly enforced." (Doc. 39, ¶ 6). This does not constitute a proper denial. Regardless of whether the requirements were uniformly enforced, Plaintiff's denial does not refute the contended fact that he was informed of the requirements at the time he was hired. Therefore, the Court deems this statement of fact to be admitted.

On or about April 25, 2007, Plaintiff was advised that his employment was being terminated because he left Tri-Way's premises without punching out, which Matino considered to be theft of time, falsification of time records and insubordination. (Doc. 28, ¶ 12; Doc. 39, ¶ 12; Doc. 27, Ex. C, ¶ 10). On that day, Plaintiff was working in Defendant's warehouse. (Doc. 28, ¶ 10). Defendant's statement of material fact and Plaintiff's response thereto agree that Plaintiff left Defendant's premises. (*See* Doc. 28, ¶ 11; Doc. 39, ¶ 11).[3] Defendant contends that Plaintiff left the premises without clocking out and returned

---

[3] In response to Defendant's statement that Plaintiff left Defendant's premises without clocking out on the day that he was terminated, Plaintiff replies that he left Defendant's premises with Defendant's permission. (Doc. 28, ¶ 11; Doc. 39, ¶ 11). However, in Plaintiff's deposition, he claims that he did not leave the premises on that day. (Dep. of James, at 98, 153-154). According every favorable inference to Plaintiff as the non-moving party, we are constrained to find that Plaintiff has disputed the assertion that he left the premises on the day he was terminated. In so doing, however, the Court notes that Plaintiff's opposition to Defendant's motion for summary judgment is not premised on this dispute.

approximately 20 minutes late from lunch.  (Doc. 28, ¶ 11).  Plaintiff denies this statement, arguing that Plaintiff left the premises with Defendant's "permission, knowledge, and consent."  (Doc. 39, ¶ 11).  This denial does not address Defendant's statement that Plaintiff did not clock out or that he was late returning from lunch.  Once again, due to Plaintiff's insufficient denial and lack of citation to any record, the Court deems Defendant's entire statement of material fact to be admitted.

Citing Plaintiff's deposition and the Affidavit of John Matino, Defendant further asserts that Plaintiff left the premises without clocking out on prior occasions, and that Matino warned Plaintiff that if he did so again, he would be terminated.  (Doc. 28, ¶ 8).  Plaintiff denies this statement, merely stating without citation that "Defendant's excerpt does not accurately reflect the testimony of the Plaintiff" and that "Plaintiff, in his protected class, was the only employee subjected to the requirement of clocking in and out."  (Doc. 39, ¶ 8).  However, during Plaintiff's deposition, he admitted that he "would forget to punch out going home" and that he did not recall whether he ever forgot to punch out at lunchtime if he left the premises.  (Dep. of James, at 101-103).  Plaintiff further testified that Matino had warned him "the one time [he] did it".[4]  (Id. at 101).  Plaintiff's denial of Defendant's statement of fact does not cite to any record evidence that he was the only one subject to the requirement of clocking in and out or explain how Defendant's statement "does not accurately reflect the testimony of the Plaintiff."  Additionally, Matino's Affidavit states that he "personally warned

---

[4] Plaintiff initially stated that he only forgot to clock out once, but when presented with his time cards, admitted that it happened more than once.  (Dep. of James, at 101-103).

6

[James] that if he left the premises without clocking out or returned late again, his employment would be terminated." (Doc. 27, Ex. C, ¶ 8). Plaintiff does not offer any evidence or deposition testimony to refute the content of Matino's warning. Consequently, Defendant's statement of fact, ¶ 8, must be deemed admitted. The same finding applies to Defendant's statement of fact that Plaintiff's timecards had to be corrected on several occasions because he failed to punch out. (Doc. 28, ¶ 9). Plaintiff denies this statement, stating without citation or elaboration that "[f]ailure to punch out occurred for different reasons not accurately reflected in Defendant's Alleged Statement of Facts." (Doc. 39, ¶ 9). This statement not only appears to be an admission that Plaintiff did fail to punch out several times prior to his termination, a fact Plaintiff denied in the previous statement of material fact (see Doc. 39, ¶ 8), but offers no indication as to how Defendant's statement does not "accurately reflect" the reasons for Plaintiff's failure to punch out, particularly since Defendant did not offer any specific reasons for Plaintiff's failure. This statement of fact is thus also deemed admitted.

Following his termination, Plaintiff's application for unemployment compensation benefits was denied. (Ex. A-3).

## III. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing

7

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

8

However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380

(2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts. Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial. The mere existence of some alleged factual dispute between
> the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no *genuine* issue of
> *material* fact. When opposing parties tell two different stories, one of which is
> blatantly contradicted by the record, so that no reasonable jury could believe
> it, a court should not adopt that version of the facts for purposes of ruling on a
> motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## IV. ANALYSIS

With the exception of Count V (Declaratory Judgment) and Count IX (Punitive

Damages), Plaintiff's remaining claims are all brought pursuant to Title VII and the

Pennsylvania Human Relations Act ("PHRA"). Specifically, Plaintiff alleges that (1)

Defendant violated Title VII and the PHRA by "fostering and perpetuating a hostile and

offensive work environment, retaliating against Plaintiff . . . because of his expressed

opposition to offensive racial, color, . . . ancestry and or national origin related conduct in

the work place, subjecting Plaintiff to more onerous working conditions, and treating him in a

disparate manner" (*see* Count III (Title VII); Count IV (PHRA)); (2) Defendant violated Title

VII and the PHRA by retaliating against Plaintiff (Count VII); and (3) Defendant violated Title

9

VII by discriminating against Plaintiff because of his race, color, or national origin (Count IV)[5]. (Doc. 1).

In support of its motion for summary judgment, the defendant submitted excerpts from Plaintiff James' Deposition Transcript (Doc. 27, Ex. A); Plaintiff's response to Defendant's Requests for Admissions (Doc. 27, Ex. B); the Affidavit of John Matino to the PHRC (Doc. 27, Ex. C); and the Declaration of Defendant's Attorney Jennifer Will (Doc. 27, Ex. D), which in relevant part includes Defendant's First Set of Interrogatories to Plaintiff (Ex. D-1) and Plaintiff's Answers thereto (Ex. D-9). In large part, the remainder of the documents attached as exhibits to the Declaration of Attorney Will appear to have been submitted for the purpose of demonstrating the extent to which Plaintiff's counsel did not participate in the discovery process or inadequately or dilatorily responded to Defendant's interrogatories and requests for production of documents, among other documents.

---

[5] It is not entirely clear what Plaintiff is alleging in Count IV of his Complaint. While titled "Civil Rights – 42 U.S.C. Section 20001e-5 [sic]", Plaintiff only references 42 U.S.C. §§ 2000e-2 and 2000e-6 in the body of this Count. (Doc. 1, ¶¶ 58-63). Section 2000e-6 is not relevant here as it pertains to civil actions by the Attorney General. Section 2000e-5 pertains to the enforcement provisions of Title VII. Section 2000e-2 in relevant part provides that an employer's discharge of any individual, or other discrimination against an individual, on the basis of that person's race, color, or national origin constitutes an unlawful employment practice. 42 U.S.C. § 2000e-2(a).

However, after citing to the aforementioned sections of Title VII, plaintiff claims that his rights were therefore violated because he was denied "the right to make and enforce contracts and enjoy the full and equal benefit of all laws as they are enjoyed by white citizens" (Doc. 1, ¶ 61), which appears to be a reference to the Civil Rights Act of 1866 (see 42 U.S.C. § 1981 ("All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . .")).

Because Defendant does not raise the issue of the ambiguity of Count IV, and despite Plaintiff's lack of clarity, the Court will interpret this Count in his Complaint as alleging discrimination pursuant to Title VII. As the Court has already dismissed Plaintiff's claim under 42 U.S.C. § 1981 (Count I) (see Docs. 17, 18), we will only address Count IV to the extent that it involves a claim under Title VII.

In turn, Plaintiff only submitted two exhibits to the Court in opposition to Defendant's motion for summary judgment: (1) a Finding of Probable Cause, issued by the PHRC (Doc. 39, Ex. 1), and (2) his answers to Defendant's First Set of Interrogatories (Doc. 39, Ex. 2), which Defendant had previously submitted.

As a result, Defendant's statement of material facts and brief in support of summary judgment both cited to admissible record evidence to support its motion. In contrast, Plaintiff has failed to offer sufficient evidence to support his conclusory allegations against Tri-Way. Even the few allegations which may be supported by a thorough review of the record by the Court are not founded on admissible evidence.

### A. Plaintiff's Exhibit Entitled "Finding of Probable Cause"

The Court begins its discussion with an analysis of the document entitled "Finding of Probable Cause" because it will affect the Court's discussion of Defendant's Motion for Summary Judgment. This document is attached by Plaintiff as Exhibit 1 to both Plaintiff's Responses to Defendant's Statement of Facts (Doc. 39) and Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment (Doc. 40). While Plaintiff broadly cites to the "Finding of Probable Cause" several times in his Responses to Defendant's Statement of Facts (*see* Doc. 39, Ex. 1, ¶¶ 5, 6, 7), he only briefly references the document in his opposition brief, without any explanation as to its importance, relevance, or admissibility (*see* Doc. 40, at 2-3).

Pursuant to the Federal Rules of Civil Procedure, a party may object that the material cited by the opposing party to support or dispute a fact cannot be presented in an admissible form. Fed. R. Civ. P. 56(c)(2). Defendant argues that the "Finding of Probable Cause" is an unauthenticated document introduced by Plaintiff "for the first time in this litigation" for the purpose of "pointing to hearsay statements contained therein as 'evidence' of discrimination." (Def.'s Reply Brief, Doc. 41, at 3).

First, despite Defendant's argument that it was unaware of this document prior to Plaintiff attaching it as an exhibit in opposition to Defendant's motion for summary judgment, the Court notes that Plaintiff did identify the "Findings of Probable Cause by the Pennsylvania Human Relations Commission and Investigation file by PHRC" in his response to Defendant's Interrogatory #2, which requested "any communication that you contend directly evidences any such claim or allegation [in this lawsuit]". (*See* Doc. 27, Ex. D-1, D-9). Therefore, the defendant cannot claim that the introduction of this document is a complete surprise or that it was unaware that such a document existed.

Next, the Court notes that it is not required to give the document itself any preclusive effect nor are its findings entitled to any deference by this Court. *See Univ. of Tennessee v. Elliott*, 478 U.S. 788, 796, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (holding that Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims). Furthermore, according to the Pennsylvania Code, "[i]f, after a *preliminary investigation*, the Commission determines that probable cause exists to credit the

12

allegations of the complaint, a finding of probable cause will be made." 16 Pa.Code §

42.71(a) (emphasis added). Thus, the Finding of Probable Cause submitted by Plaintiff is

merely the result of a preliminary investigation, and regardless of the Commission's finding

of probable cause, does not contain findings of fact such as would have been made by an

impartial adjudicator in an adversarial proceeding. As such, the determinations in the

Finding of Probable Cause itself will be given no weight by this Court.

The Court next turns to the contents within the Finding of Probable Cause. The

document contains statements allegedly made by Edward Aggers, Donny Koons, and

Vincent Bindie. (Doc. 39, Ex. 1, at ¶¶ 17, 20, 21, 23). The document does not identify how

these statements were obtained, nor are any affidavits or sworn declarations by these three

individuals attached to it. The statements – which Plaintiff is apparently offering for the truth

of the matter asserted – constitute hearsay within hearsay. The same issue arises with

respect to the document's assertion that other employees' time cards show that they did not

punch out or back in at lunch time. (Id. at ¶ 24). The Finding of Probable Cause submitted

by Plaintiff does not include copies of these time cards and the PHRC's statements that the

time cards do not reflect that any other employee had to punch out at lunch is

unsubstantiated double hearsay.

A non-moving party need not "produce evidence in a form that would be admissible

at trial in order to avoid summary judgment." *Celotex*, 477 U.S. at 324. Rather, the

evidence may be considered if it can be reduced to admissible evidence at trial. *Id.* at 327.

13

Thus, hearsay statements must be capable of admission at trial in order for a court to consider them on summary judgment. *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 223 n. 2 (3d Cir. 2000). Hearsay will be inadmissible absent falling within a hearsay exception established in Fed. R. Evid. 803 and 804, satisfying the residual hearsay exception found in Rule 807, or being considered non-hearsay under rule 801(d). In the case of hearsay within hearsay, each part of the combined statements must conform with an exception to the rule against hearsay in order to avoid exclusion. Fed. R. Evid. 805. A proponent of the evidence at issue has the burden of establishing that it is admissible. *Pittsburgh Press Club v. U.S.*, 579 F.2d 751, 758 (3d Cir. 1978).

Here, Plaintiff does not make any attempt to lay a foundation for the authenticity of the Finding of Probable Cause or the statements therein. Nor does Plaintiff address the admissibility of the document, including whether it, or the statements and findings within it, are subject to any exception to the hearsay rule. Nonetheless, it is clear that the PHRC document does not meet any exception to the hearsay rule, nor do any of its contents, and therefore Plaintiff would be unable to succeed in presenting this evidence in admissible form at trial.

Even if the Court were to consider the evidence within the Finding of Probable Cause and find that some exception to the rule against hearsay applied to each part of the evidence, the information is largely unsubstantiated and unreliable.

With respect to the statements made by three individuals, none of the statements can salvage Plaintiff's claims or create a factual dispute for trial. Edward Aggers' statement (Doc. 39-1, ¶ 17) provides no help to Plaintiff. Aggers "corroborate[d]" James' allegations that he was verbally harassed by Hower. However, Defendant does not dispute that Hower called Plaintiff racist names and for the purposes of this motion the Court treats as true Plaintiff's allegations that Hower made racist jokes and comments.

As to Donny Koons, he was a supervisor and admitted that he therefore did not have to punch in or out. The Finding of Probable Cause characterizes Koons as "not believ[ing] that the people working in the shop are required to punch in or out for lunch." (Doc. 39, Ex. 1, ¶ 20) (emphasis added). According to Plaintiff, Koons was his supervisor in the field. (Dep. of James, at 94). Thus, not only does Koons not contend that he definitively knew whether shop employees need to punch out at lunch, he did not work in the shop and seemingly lacks the personal knowledge sufficient to comment on this issue. Further, none of the information provided by Koons is in the form of a direct quote, but rather appears to be a summary or characterization of Koons' statements by the author of the Finding of Probable Cause.

With respect to Vincent Bindie, Plaintiff faces several issues in asking the Court to consider the paragraphs in the Finding of Probable Cause purporting to describe Bindie's comments (Doc. 39, Ex. 1, ¶¶ 21-23). First, James testified that Bindie is dead. (See Dep. of James, at 90). Therefore, it would not be possible for him to provide admissible evidence

at trial. Second, the Finding of Probable Cause summarizes Bindie's comments as stating

that on the day James was fired, Plaintiff "had stepped outside the shop, still on [Tri-Way's]

property, and was confronted by Mr. Martino [sic] who 'flipped out on him' and then fired him

for no reason." (Doc. 39, Ex. 1, ¶ 21). Once again, this statement is not a direct quote, but

a summary or characterization by the author of what Bindie either said or wrote. Further,

Bindie's belief about whether there was a reason for James' termination is merely a

personal opinion and without personal knowledge. Third, although Bindie apparently told

the author of the Finding of Probable Cause that no one working in the shop was required to

punch in or out for lunch, he also admitted that on one occasion he was a "no-call, no-show"

and that there were no consequences for that policy violation but that Matino informed him

that he would be fired if it happened again. This purported response by Matino mirrors what

undisputedly happened to Plaintiff. James did not receive any consequences for his

multiple policy violations but admitted that Matino did warn him when he forgot to punch out

after work one day. According to Matino, this warning included telling James that he would

be terminated if he left the premises without clocking out or returned late.

Aside from the statements by three employees, the Finding of Probable Cause also

states that a review of time cards for seven named individuals "employed by [Tri-Way] who

punched in on a regular basis during the time [James] was employed indicated that no other

individual punched in or out for a lunch break . . . ." (Doc. 39, Ex. 1, ¶ 24). Of the seven

individuals whose time cards were reviewed by the PHRC, only Dennis Hower and Vince

Bindie are known to the Court. The Court does not know, nor does Plaintiff ever attempt to explain, who the other individuals are and whether they worked in the shop, field, or both. Drawing all inferences in favor of Plaintiff, the Court accepts that only workers in the shop who were leaving the premises for lunch had to punch out. However, all non-supervisory employees, including those working in the field, had to punch out at the beginning and end of their shifts. It is therefore unclear whether some or all of the named individuals worked only in the field and were not required to punch out for lunch. Even assuming that each of these individuals worked in the shop, the Court cannot ascertain whether some or all of these individuals simply did not leave the Tri-Way premises for lunch, or that if they did, their employer was aware of this alleged policy violation.

As a result of Plaintiff's failure to establish that the Finding of Probable Cause and any of its contents are capable of being admissible at trial, the Court will not consider this document when ruling on Defendant's motion for summary judgment.

## B. Plaintiff's Claims of Discrimination

Title VII and the PHRA both prohibit discrimination by an employer against an individual on the basis of that individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a); 43 P.S. § 955(a). In applying the PHRA, the Act is construed consistently with interpretations of Title VII. *Gomez v. Allegheny Health Servs., Inc.,* 71 F.3d 1079, 1083-1084 (3d Cir. 1995).

Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to establish a *prima facie* claim of discrimination under Title VII, a plaintiff must demonstrate that "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the circumstances of the adverse employment action give rise to an inference of discrimination." *Johnson v. Keebler-Sunshine Biscuits, Inc.,* 214 F.App'x. 239, 241 (3d Cir. 2007) (citing *Jones v. Sch. Dist. of Philadelphia,* 198 F.3d 403, 410-11 (3d Cir. 1999)). If the plaintiff fails to raise a genuine dispute of material fact with respect to any of the four elements, he has failed to meet his initial burden and summary judgment is properly granted for the defendant. *Burton v. Teleflex Inc.,* 707 F.3d 417, 426 (3d Cir. 2013).

If a plaintiff meets his initial burden under *McDonnell Douglas*, the burden shifts to the employer to establish a "legitimate, non-discriminatory reason for the adverse employment decision." *Goosby v. Johnson & Johnson Med., Inc.,* 228 F.3d 313, 318-19 (3d Cir. 2000). "This burden is relatively light and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Burton*, 707 F.3d at 426 (internal citations and quotation marks omitted). "At this stage, the defendant need not prove that the articulated reason actually motivated its conduct." *Id.*

If a defendant articulates a non-discriminatory reason for its actions, a plaintiff generally must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to find that discrimination was more likely than not a motivating or determinative cause of termination. *Fuentes v. Perskie,* 32 F.3d 759, 762 (3d Cir. 1994).   To discredit the employer's proffered reason for its actions, Plaintiff faces a "difficult burden"; specifically,

> the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.   Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons.

*Id.* at 765 (internal citations and quotation marks omitted).   In other words, the Plaintiff "must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1109 (3d Cir. 1997).

Here, Defendant acknowledges that James is African-American and his employment was terminated, therefore conceding that Plaintiff has established the first and third elements of the *McDonnell Douglas* analysis necessary for Plaintiff to establish his *prima*

*facie* claim. (Doc. 29, at 11). However, Defendant argues that Plaintiff cannot satisfy the fourth element of *McDonnell Douglas*.[6]

The fourth element of *McDonnell Douglas* requires Plaintiff to demonstrate that the circumstances of the adverse employment action give rise to an inference of discrimination; i.e. Plaintiff must show that he "was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (cited approvingly by the Third Circuit in *Johnson*, 214 F.App'x. at 242). Accepting as true for the purposes of this Opinion Plaintiff's deposition testimony that Hower "often" called him "the N-word and boy", that he reported Hower's harassment "more than half a dozen times" to Matino, and that he was only aware of Matino speaking to Hower about the complaints once [7] (Dep. of James, at 112-113, 144-145), this is marginally sufficient for Plaintiff to meet his *prima facie* burden.

---

[6] Defendant does not address the second factor of *McDonnell Douglas*, to wit, whether James was qualified for the position he held. An examination of the record and drawing all inferences in favor of the Plaintiff leads this Court to accept for purposes of this Opinion that it is undisputed that James was qualified for his position.

[7] The Court notes that James' belief that Matino spoke to Hower is the result of hearsay.

Q: Did you ever report it [Hower's comments] to anyone else?
JAMES: No.
Q: What did John Matino do when you reported it?
JAMES: He said he would talk to him.
Q: Do you know whether he did?
JAMES: I remember him talking to him once.
Q: Were you present for that?
JAMES: I heard about it.
Q: From who?
JAMES: Another employee.
Q: Who?
JAMES: I don't recall.

Assuming that Plaintiff can meet his *prima facie* burden under *McDonnell Douglas*, Defendant has put forth a legitimate, non-discriminatory reasons for terminating James, specifically, that he failed to punch out when he left Defendant's premises on or about April 25, 2007, despite at least one prior warning that he needed to do so, and that the company deemed this to be a "theft of time, falsification of time records and insubordination." In support of their "relatively light" burden, Defendant presents the Affidavit of John Matino, which states that the company had a policy that shop employees must clock out at lunchtime if they leave the Company's premises, that on prior occasions James had left the premises for lunch without clocking out and returned late from lunch, that Matino warned James that if this happened again he would be terminated, and ultimately that James was terminated for "theft of time, falsification of time records and insubordination." (Doc. 27, ¶¶ 5, 7, 8, 10). Defendant also submitted several time cards of Plaintiff while he was working at Tri-Way, which state that Plaintiff's listed number of hours-worked were reduced because "employee failed to punch out." (*See* Doc. 27, Ex. 4 to Dep. of James). Plaintiff does not dispute the authenticity of these time records, and when the time cards were presented to James during his deposition, he explained that he "would forget to punch out going home" and that Matino had warned him "the one time [he] did it". (Dep. of James, at 101, 102-

---

(Dep. of James, at 145-146). However, according to Matino's Affidavit, after a co-worker of James reported that he overheard Hower make "an inappropriate comment", he "advised Mr. Hower that we do not tolerate harassment of any kind and that any future incidents would result in disciplinary action." (Doc. 27, Ex. C, ¶ 3). Thus, it appears undisputed that Matino spoke to Hower at least once.

103). Plaintiff also admitted during his deposition that he did not recall whether he ever forgot to punch out at lunchtime if he left the premises. (Dep. of James, at 101-103).

While Defendant has presented sufficient evidence to establish a "legitimate, non-discriminatory reason for the adverse employment decision", Plaintiff does not present any admissible evidence to demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence", see Fuentes, 32 F.3d at 765. Plaintiff did not deny during his deposition that he failed to punch out, admitted that he was aware of the Company's rules regarding punching out, and admitted that he had been warned by Matino that he must punch out. James does not present any admissible evidence or deposition testimony that other shop employees at Tri-Way were not required to punch out at lunch or were not subject to the same rules and regulations as James.[8] Had Plaintiff come forward with such evidence, this would have created a dispute of material fact and may have defeated summary judgment. Instead, Plaintiff has come forward with no such evidence and instead in his Reponses to Defendant's Statement of Facts improperly relied upon the allegations of his Complaint and the inadmissible hearsay set forth in the Finding of Probable Cause which itself is hearsay.

---

[8] The only evidence which could support Plaintiff's position that he was treated differently than other shop employees is Bindie's purported statement that no one working in the shop was required to punch in and out at lunch. (Doc. 39, Ex. 1, ¶ 21). However, this comment is only found in the Finding of Probable Cause, and as previously discussed, is the product of double hearsay and is incapable of being rendered admissible at trial for several reasons, including the fact that the record evidence is that Bindie is now deceased.

Further, while Plaintiff repeatedly focuses on the derogatory comments made by Hower, he fails to demonstrate how the comments of one co-worker can somehow create a causal inference that Matino, the decision-maker, fired Plaintiff for a discriminatory reason or that Matino's reason for terminating Plaintiff was pretextual.

Plaintiff does not address *McDonnell Douglas* in his brief opposing Defendant's motion for summary judgment, nor does he respond in any way to Defendant's arguments. Thus, in sum, even assuming that Plaintiff did establish a *prima facie* case of discrimination, not only did Plaintiff not even mention the issue of pretext, he also did not offer any evidence to challenge Defendant's purported reason for terminating him or to raise a genuine dispute of material fact as to Defendant's asserted legitimate and non-discriminatory reason for the adverse employment action.

Instead of even briefly addressing *McDonnell Douglas* in his brief opposing Defendant's motion for summary judgment, Plaintiff simply states that "[a] plaintiff in an employment discrimination action may establish a *prima facie* case either through direct evidence of discrimination . . . or through the framework set out in *McDonnell Douglas*" and then, without any citation to the record, that there is "direct evidence to show that Plaintiff, Leo James, Jr., was terminated by Defendant due to his race." (Doc. 40, at 4, 6). As a result, Plaintiff apparently felt it unnecessary to address *McDonnell Douglas*.

Direct evidence of discrimination "must be 'so revealing of [discriminatory] animus that it is unnecessary to rely on the [*McDonnell Douglas - Burdine*] burden-shifting

framework, under which the burden of proof remains with the plaintiff.'" *Anderson v.*

*Wachovia Mortg. Corp.*, 621 F.3d 261, 269 (3d Cir. 2010) (quoting *Walden v. Georgia-*

*Pacific Corp.,* 126 F.3d 506, 512 (3d Cir. 1997)). "Direct evidence may take the form of a

workplace policy that is discriminatory on its face, or statements by decision makers that

reflect the alleged animus and bear squarely on the adverse employment decision. . . .

Direct evidence does not include stray remarks that are made in a context unrelated to the

employment decision, particularly if they are remote in time." *Garcia v. Newtown Tp.*, 483

F.App'x. 697, 704 (3d Cir. 2012). Therefore, evidence must satisfy two requirements to be

considered "direct":

> First, the evidence must be strong enough to permit the factfinder to infer that a discriminatory attitude was more likely than not a motivating factor in the [defendant's] decision. Second, the evidence must be connected to the decision being challenged by the plaintiff. Specifically, any statements made by a defendant's employees must be made at a time proximate to the challenged decision and by a person closely linked to that decision.

*Wachovia*, 621 F.3d at 269 (internal citations and quotation marks omitted).

Here, Plaintiff testified that Hower "often" called James "the N-word and boy". (Dep.

of James, at 112-113). However, even affording Plaintiff every reasonable inference, and

therefore assuming that some of Hower's statements were temporally close to James'

termination, Plaintiff has failed to show that any statements were made by a decision maker

or person "closely linked" to his termination.

Plaintiff first testified that he believed that Matino had a "subtle" racial animus, but

when asked what this meant, stated that "maybe [he] answered [the question] wrong".

James clarified that Matino "never said anything" but that if "they" told a joke, "[Matino] would get a kick out of it". (Dep. of James, at 109-110). However, the only person that Plaintiff could definitively state told racist jokes was Hower. Plaintiff admitted that Hower only told "one or two" of these jokes and that he could not recall the substance of the joke(s). Plaintiff also explained that Matino's response was "a little chuckle and then he would go on his way." (Id. at 110-111). Assuming that Hower did tell a racist joke more than one time, it is unclear whether Matino even heard the joke both times.

Plaintiff cites multiple cases in support of his argument that there is direct evidence in the present case to support his claim of discrimination. However, in every case he cites, it was a decision maker whose statements created the necessary direct evidence. See e.g., Cordova v. State Farm Ins. Cos., 124 F.3d 1145, 1148-1149 (9th Cir. 1997) (alleged comments by the manager responsible for selecting the trainee agent that a Hispanic employee was a "dumb Mexican" and was hired because he was a minority can create an inference of discriminatory motive and can be offered as direct evidence of discriminatory animus); Beshears v. Asbill, 930 F.2d 1348, 1154 (11th Cir. 1991) (a remark by the employer's president, who actively participated in personnel decisions, to the effect that older employees had problems adapting to changes and to new policies, as well as several age-related comments by another official at the company involved in employment decisions were direct evidence of age discrimination); Wright v. Southland Corp., 187 F.3d 1287, 1303-1304 (11th Cir. 1999) (comments that the plaintiff was too old, made by both of the

people responsible for the decision to terminate the plaintiff, constituted direct evidence to support an allegation that plaintiff was terminated because of his age).

In contrast, here, Plaintiff does not present any evidence or even allege that Hower was a decision maker in the company or had any control over Tri-Way's decision to terminate the plaintiff. Rather, it is undisputed that Matino was the decision maker and was the person who fired James. However, Plaintiff does not point to a single statement or remark made by Matino that could even possibly be considered direct evidence that James' termination was racially motivated or that could raise an inference of discriminatory animus. Even if the Court were to look to the Finding of Probable Cause submitted by Plaintiff, there is no statement which could be interpreted as direct evidence of alleged animus on the part of Matino or any other decision maker.

As a result of Plaintiff's failure to point to specific evidence on the record to establish a genuine issue of material fact with respect to Plaintiff's claim of discrimination under either *McDonnell Douglas* or a direct evidence analysis, Defendant is entitled to judgment as a matter of law with respect to Plaintiff's claims of discrimination.

### C. Plaintiff's Claim of a Hostile Work Environment

To establish a claim for employment discrimination due to an intimidating or offensive work environment, a plaintiff must show "(1) that he . . . suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally

affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996).

Defendant argues that Plaintiff cannot establish any of the aforementioned elements, and then engages in a detailed analysis of the lack of evidence which could support Plaintiff's claim. (Doc. 29, at 13-21). Plaintiff's argument in response consists of one sentence: "the Plaintiff was subject to harassment and retaliation." (Doc. 40, at 6). Courts within this District have found that a failure to address an opposing party's arguments on a claim should result in the arguments being deemed unopposed and the claim dismissed. *See Sikkelee v. Precision Airmotive Corp.*, 2011 WL 1344635, *4 (M.D. Pa. 2011) (collecting cases). At minimum, Plaintiff has waived any legal arguments with respect to this claim for all purposes. Nonetheless, although this Court does not deem a one sentence conclusory statement to constitute a proper response to Defendant's arguments, we will still engage in a limited analysis of this claim.[9]

The Supreme Court has held that "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview." *Harris v. Forklift Sys.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Determining whether an environment is hostile "is not, and by its nature cannot be, a mathematically precise test."

---

[9] This finding also applies to Plaintiff's claims of retaliation, in which Plaintiff's only response in opposition to Defendant's arguments was the same sentence, to wit, "the Plaintiff was subject to harassment and retaliation" (Doc. 40, at 6).

*Id*. at 23. To determine whether an environment is hostile, the Court must look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. "These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code. Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (internal citations and quotation marks omitted).

Defendant contends that Plaintiff cannot "substantiate his claim that Mr. Hower's objectionable conduct was pervasive" and that Plaintiff "has not produced any actual evidence to support his claim that he suffered intentional discrimination on the basis of his race." (Doc. 29, at 18).

Plaintiff does not allege that Hower ever physically threatened or humiliated him. Instead, Plaintiff's hostile work environment claim is based on Hower's racist comments and joke(s). The "mere utterance of an epithet which engenders offensive feelings in a employee, does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21. Thus, while racial slurs and epithets are reprehensible, these comments alone are generally not enough to create a hostile work environment. *See*

*Singletary v. Missouri Dept. of Corrections*, 423 F.3d 886, 893 (8th Cir. 2005) (finding that "racial slurs alone do not render a work environment hostile as a matter of law" and that a plaintiff must "show more than a few occurrences over a course of years[; t]o be actionable, such conduct must be shown to occur with such frequency that the very conditions of employment are altered and be viewed by a reasonable person as hostile.").

As discussed *supra*, Plaintiff testified that Hower told "one or two" racist jokes. James was unable to identify the substance of these jokes or anyone else who told racist jokes. While this in itself would not create an issue of fact as to whether Plaintiff was subject to a hostile work environment, *see Faragher*, 524 U.S. at 788, Plaintiff's description of Hower's racist comments towards him as occurring "often" and "every chance he got" (Dep. of James, at 112) creates a closer factual issue. However, when looking at the totality of the circumstances, Plaintiff's claim is severely undercut by the record evidence which fails to demonstrate that the harassment was frequent, altered the conditions of his employment, or detrimentally affected him so as to make out a claim under Title VII.

Although Plaintiff testified that Hower's comments were frequent when the two worked together, Plaintiff does not present any evidence to create a dispute of material fact as to Defendant's contention that the two individuals did not work together on a regular basis. Plaintiff worked with Hower every time he was in the shop. (Dep. of James, at 84). However, Plaintiff testified that he would only work in the shop "[w]hen we were slow and didn't have a lot of work outside[;] . . . [a]s long as work was steady, I was outside in the

field." (*Id.* at 79). When asked how frequently James worked at the shop, he responded that he did not know and that "[s]ometimes it would be for a couple weeks; sometimes for a couple days out of the week" and that there was also a time when he was there for approximately three months. (*Id.* at 84). Thus, in the span of Plaintiff's approximately one year employment at Tri-Way, Plaintiff's testimony demonstrates that he was primarily in the field and it is unclear how much of his employment was spent in the shop with Hower. In light of this lack of evidence, Plaintiff fails to establish the frequency of the discriminatory conduct by Hower.

Further undermining Plaintiff's claim regarding the pervasiveness of the conduct, according to Plaintiff, Hower "often" called him "the N-word and boy" and he reported Hower's harassment "more than half a dozen times" to Matino. (Dep. of James, at 112, 144-145). However, in response to Defendant's interrogatory requesting "each and every fact, communication, and/or document upon which you rely in support of the allegations in your Complaint that you made any report during your employment with Defendant of discrimination, harassment or a hostile work environment based on race, color, national origin and/or ancestry" (Doc. 27, Ex. D-1), Plaintiff replied that he "[v]erbally reported discrimination to . . . Matino, each time it occurred" (Doc. 27, Ex. D-9). Therefore, although Plaintiff characterizes Hower's comments as "often", the record evidence shows that the comments occurred approximately six times over the course of eleven months (*see* Dep. of James, at 145). This number of comments, made by only one co-worker, is insufficient to

create a dispute of material fact as to the pervasiveness of the comments, particularly in light of Plaintiff's inability to identify with any specificity when they occurred. *Compare, Kidd v. MBNA America Bank, N.A.*, 93 F.App'x 399, 402 (3d Cir. 2004) (Where Plaintiff presented evidence that a male co-worker made "several disparaging remarks" and made other threatening comments, despite Plaintiff's argument that the harassment was continuous, she only presented evidence of a few isolated incidents and "these comments by a single coworker do not establish that discrimination was pervasive and regular."); *Singletary*, 423 F.3d at 893; *with Aman*, 85 F.3d at 1082 (Multiple employees' inherently racist remarks and harassment of black employees on a daily basis over the course of six years was sufficient to demonstrate a working environment "pervaded by discriminatory intimidation, ridicule, and insult.").

Plaintiff also testified that when he and Hower were working together, Hower would "throw stuff" and hit the iron with a hammer "real hard" which hurt Plaintiff's ears. (Dep. of James, at 114-115). Although Plaintiff testified that Hower did not do this to anyone else, he also stated that no one else assisted Hower in painting. (*Id.* at 116). When asked whether Plaintiff believed Hower's conduct was due to racism, Plaintiff responded that "[he didn't] know why. [Hower] was just ignorant" and that Hower was not hitting the hammer because of James' race but instead "was doing it to be smart or nasty." (*Id.*).

Finally, Plaintiff has not presented any evidence that Hower's conduct unreasonably interfered with his work performance. To establish the third element of his claim for a

hostile work environment, the Plaintiff must show that "the discrimination detrimentally affected the plaintiff." This subjective factor "is crucial because it demonstrates that the alleged conduct injured this particular plaintiff giving [him] a claim for judicial relief." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1483 (3d Cir. 1990). Other than being warned that he must clock out if he was working in the shop and was leaving the Defendant's premises, there is no evidence that Plaintiff was ever reprimanded in any way for not properly doing his job. Plaintiff has also not produced any evidence that he was unable to do any aspect of his job due to Hower's comments, that he was reluctant to do whatever tasks were requested of him because of Hower's presence or comments, that his job performance suffered because of Hower, or that he disliked his job or feared working in the shop because of Hower. Plaintiff's claim is further undermined by his statement that he "loved the job." (Dep. of James, at 108). This statement goes directly to Plaintiff's subjective feelings about his employment and severely negates an argument that Hower's comments in the work-place detrimentally affected him.

For the afore-stated reasons, Plaintiff has failed to show that a genuine dispute of material fact exists with respect to his claim of a hostile work environment. Therefore, summary judgment will be entered in favor of Defendant on this claim.

### D. Plaintiff's Claims of Retaliation

To establish a *prima facie* Title VII retaliation claim, an employee must show that "(1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment

action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia,* 461 F.3d 331, 340-341 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.,* 51 F.3d 383, 386 (3d Cir. 1995)). If the employee establishes his *prima facie* claim, the *McDonnell Douglas* approach applies, shifting the burden to the employer to advance a legitimate, non-retaliatory reason for its conduct. *Id.* at 342 (quoting *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir. 1997)). If the employer provides such a reason, the plaintiff must then "be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.* (quoting *Krouse,* 126 F.3d at 500-501).

Just as with his hostile work environment claim, Plaintiff's response to Defendant's arguments with respect to his retaliation claim is one sentence: "the Plaintiff was subject to harassment and retaliation." (Doc. 40, at 6). This statement again leaves the Court to guess as to how Plaintiff believes that he has established the necessary elements of his claim.

"With respect to protected activity, the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the participation clause) and those who oppose discrimination made unlawful by Title VII (the opposition clause)." *Moore,* 461 F.3d at 341 (internal citations and quotation marks omitted). "Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including

making complaints to management. To determine if retaliation plaintiffs sufficiently opposed discrimination, we look to the message being conveyed rather than the means of conveyance." Id. at 343 (internal citation and quotation marks omitted).

Here, although somewhat unclear, the Court assumes that the protected activity in which Plaintiff allegedly engaged are his "more than half a dozen" complaints to Matino that Hower was "saying certain things about me or still calling me the – nigger." (Dep. of James, at 144-145). Plaintiff can therefore establish the first element of his *prima facie* case of retaliation.

Because it is undisputed that the employer took an adverse employment action against James, Plaintiff can also establish the second element of a *prima facie* retaliation claim. However, Plaintiff fails to present any evidence of a causal connection between his complaints about Hower to Matino and his termination, thereby preventing him from establishing the third and final element of his claim.

Even assuming that Plaintiff had established his *prima facie* retaliation claim, as discussed with respect to Plaintiff's claim for discrimination, Defendant has advanced a legitimate, non-retaliatory reason for Plaintiff's termination. In turn, Plaintiff has not provided any admissible record evidence "to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action", *see Moore,* 461 F.3d at 342.

34

Accordingly, summary judgment will be granted to Defendant on Plaintiff's claim of retaliation.

## V. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment (Doc. 26).  A separate Order follows.

Robert D. Mariani
United States District Judge